UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GAIL JONES, in her capacity as Executrix of the Estate of Gary Jones, | ) ) ) | |
| Plaintiff, | ) | CIVIL ACTION |
| v. | ) | NO. 11-91101-PBS |
| | ) | |
| LAWRENCE SECORD, | ) ) | |
| Defendant. | ) | |

# MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S MOTION TO COMPEL DOCUMENTS

June 15, 2011

DEIN, U.S.M.J.

## I. INTRODUCTION

This matter is before the court on "Plaintiff's Motion to Compel Production of Documents By Keeper of the Records, The Hanover Insurance Group, Inc." (Docket No. 1). By this motion, the plaintiff is seeking the production of documents pursuant to a subpoena issued by this court and duly served on Hanover on March 8, 2011. Specifically, the plaintiff is seeking documents memorializing what the defendant, Lawrence Secord, reported to his insurer regarding the manner in which his gun was stored and the date on which he learned his gun had been stolen. Hanover has declined to produce these documents, claiming that they are protected by the attorney work product doctrine.

A hearing on plaintiff's motion to compel was held before this court on June 2, 2011. Secord appeared and opposed the motion, but Hanover failed to appear. After

consideration of the record and arguments of counsel, and for the reasons detailed herein, the motion to compel is ALLOWED.

## II. STATEMENT OF FACTS

The subpoena was issued in connection with a case arising out of the death of the plaintiff's decedent, Gary Jones, which was then pending in, and is now on appeal from, the United States District Court for the District of New Hampshire. The relevant facts, as provided to this court, are as follows:

### Facts of the Underlying Litigation

On July 2, 2007, Michael Woodbury shot and killed three victims, including Gary Jones, in a botched robbery attempt. Woodbury had stolen the handgun used in the crime from his grandfather, the defendant herein Lawrence Secord. On or about April 19, 2010, the executrix of Jones' estate, the plaintiff Gail Jones, brought an action against Secord in New Hampshire alleging that he had negligently failed to secure the handgun properly, or to report its theft to the police in a timely manner.

A critical issue in the case was the date on which Secord learned that his gun had been stolen. According to the plaintiff, Secord represented in a statement to the New Hampshire State Police that he had first learned of the theft on June 28, 2007, five days prior to the murder. At his deposition, Secord testified that he did not know that his home had been burglarized until July 3, 2007, a day after the murder. The plaintiff contends that prior to the litigation, Secord made a different representation to Donna Moniz-

Levesque, a Hanover claims representative. Documents reflecting that conversation are the subject of the motion to compel.

## The Alleged Conversation With Hanover

Prior to commencing the lawsuit against Secord, plaintiff's counsel had sent a demand letter dated July 24, 2009 to the defendant, asserting that Secord had been negligent in failing to properly maintain his gun and make sure that it "did not fall into the hands of any individual who intended to use the gun for an improper purpose." The letter did not make any reference to litigation, but did ask Secord to forward the letter to his "liability insurance company, and ask them to contact [the sender] as soon as possible." Secord forwarded a copy of the demand letter to his homeowner's insurer, Hanover, on or about August 4, 2009. According to plaintiff's counsel, he was then contacted by Donna Moniz-Levesque, Hanover's claims representative. During the course of the conversation, Ms. Moniz-Levesque represented that she had spoken to Secord, and he had told her that he (Secord) had first learned of the theft of his handgun on June 30, 2007, approximately two days prior to the murder. It was Ms. Moniz-Levesque's contention that even if Secord had reported the theft to the police immediately, they would have had insufficient time to take action and stop the murder. Hanover has not denied that this conversation took place.

Suit was commenced in New Hampshire in April 2010. On July 14, 2010, Secord was deposed. During this deposition, Secord testified that he had not found his home burglarized until July 3rd, after the murder had taken place. Secord was specifically

3

questioned about his alleged conversation with Ms. Moniz-Levesque. Thus, the following exchange took place without objection:

> Q. Do you recall having any conversations with a Donna Monique Leveque [sic]?
> A. Yes.
>
> Q. From Hanover Insurance Company?
> A. Yes.
>
> Q. What did you tell her about when you first learned that your camp had been burglarized?
> A. That would have been on July 3rd.
>
> Q. That's what you told her?
> A. I believe so.
>
> Q. You didn't tell her June 30th?
> A. No.

(Pl. Ex. 5).

## The Subpoena

On March 8, 2011, plaintiff subpoenaed documents from Hanover and its agents regarding statements Secord had made. The subpoena was issued by this court as Hanover is located in Massachusetts. On March 16, 2011, Secord filed a Motion to Quash the subpoena and a deposition notice the plaintiff had issued to the Keeper of Records of Hanover. Although the subpoena had been issued by this court, and the deposition was to take place in Massachusetts, Secord filed the motion to quash with the New Hampshire District Court. But see Fed. R. Civ. P. 45(c)(3)(A) (issuing court is to quash or modify a subpoena). On March 18, 2011, Hanover filed objections to the

subpoena with the New Hampshire court, claiming that all the requested documents were privileged. On April 21, 2011, the plaintiff filed the instant motion to compel with this court in accordance with Fed. R. Civ. P. 45(c)(2)(B)(i) (motion to compel to be brought in court issuing the subpoena).

On April 26, 2011, before any action had been taken on Secord's motion to quash pending in New Hampshire, or on plaintiff's motion to compel pending before this court, the New Hampshire District Court allowed the defendant's motion for summary judgment without a hearing. Therein, the District Judge found that the "undisputed evidence demonstrates that [Secord] did not learn of the theft until after the murder." Jones v. Secord, No. 10-cv-146-PB, 2011 WL 1584832, at *1 (D.N.H. Apr. 26, 2011) (unpub. op.). The District Judge explained that the inconsistent date in the State Police report was apparently an error conflating two events, and relied instead on Secord's deposition testimony. Id. & n.2. Secord's motion to quash was subsequently denied as moot, and the merits of the plaintiff's request for documents was never heard. The District Court's decision is now pending on appeal.

Additional facts will be provided below where appropriate.

### III. ANALYSIS

#### A. The Work Product Doctrine

Hanover contends that the documents reflecting the conversation its claims adjuster had with Secord are protected by the work product doctrine. As an initial matter, Hanover has not established that the information the plaintiff is seeking – the statements

5

made by Secord as to the manner in which the gun was stored and the date the gun was stolen – can qualify as work product information. See In re Grand Jury Subpoena, 220 F.R.D. 130, 140 (D. Mass. 2004) ("the party seeking work product protection has the burden of establishing its applicability"). "Because the work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts contained within work product." Resolution Trust Corp. v. Dabney, 73 F.3d 262, 266 (10th Cir. 1995). Since plaintiff is seeking only the fact of what Secord said, and will accept the documents in redacted form if appropriate, it appears that the information does not constitute work product at all.

Even if the documents constitute work product, however, they should still be produced. "In order to qualify for protection under the work product doctrine, the material in question must: 1) be a document or tangible thing, 2) which was prepared in anticipation of litigation, and 3) was prepared by or for a party, or by or for its representative." Amica Mut. Ins. Co. v. W.C. Bradley Co., 217 F.R.D. 79, 83 (D. Mass. 2003) (internal citation and punctuation omitted). See Fed. R. Civ. P. 26(b)(3). "Coverage investigations by insurance companies are not per se conducted in anticipation of litigation, and a determination as to whether documents generated during such investigations were prepared in anticipation of litigation, as opposed to in the ordinary course of business, should be made on a case-by-case basis." Amica Mut. Ins. Co., 217

6

F.R.D. at 83.  Accord Galvin v. Pepe, No. 09-cv-104-PB, 2010 WL 2720608, at *4 (D.N.H. July 8, 2010).  That is because:

> unless and until an insurance company can demonstrate that it reasonably considered a claim to be more likely than not headed for litigation, the natural inference is that the documents in its claims file that predate this realization were prepared in the ordinary course of business, i.e., the business of providing insurance coverage to insureds.  This approach realistically recognizes that at some point an insurance company shifts its activity from the ordinary course of business to anticipation of litigation, and no hard and fast rule governs when this change occurs.

S.D. Warren Co. v. E. Elec. Corp., 201 F.R.D. 280, 285 (D. Me. 2001) (internal citation and punctuation omitted).  The party claiming the privilege under the work-product doctrine bears the burden of establishing that the requested material is work product.  Id. at 282, and cases cited.  Here, Hanover has not shown that the documents at issue were prepared in anticipation of litigation rather than in the ordinary course of business.

In the instant case, it is undisputed that Hanover had just received the demand letter when Ms. Moniz-Levesque had the relevant conversation with Secord.  However, litigation had not been commenced and was not even mentioned in the demand letter.  Rather, it appeared that the plaintiff was willing to engage in discussions, and that litigation could have been avoided at that point.  It appears to this court that the initial conversation with Secord was conducted in the ordinary course of the insurance company's business to evaluate claims.  Hanover has not met its burden of proving that its initial communication with Secord, and the documents made reflecting such

7

communications, were created in anticipation of litigation.  See U.S.v. Textron Inc. and Subsidiaries, 577 F. 3d 21, 29-30 (1st Cir. 2009).

Even if Hanover had established that the documents were work product, the plaintiff has established that they fall into an exception because she "has substantial need for the materials to prepare [her] case and cannot, without undue hardship, obtain their substantial equivalent by other means."  Fed. R. Civ. P. 26(b)(3)(A)(ii).  Plaintiff has been careful to exclude from her request any part of the documents which might disclose Hanover's "mental impressions, conclusions, opinions, or legal theories."  See Fed. R. Civ. P. 26(b)(3)(B).  Rather, she simply wants those portions of the documents which reflect statements made by Secord, in particular but without limitation, those statements concerning the date Secord says he learned the gun was missing.  Significantly, Hanover has not denied that the conversation between Ms. Moniz-Levesque and plaintiff's counsel took place.  The date Secord learned of the burglary was a critical fact in the litigation.  Plaintiff cannot obtain information about what Secord told Ms. Moniz-Levesque from any source other than Hanover's documents.  Therefore, even if the documents are work product, they fall within an exception requiring that they be produced.

## Waiver

Even if the documents are privileged and do not fall within any exception, they nevertheless must be produced for the additional reason that any privilege has been waived.  In the case of the work product doctrine, the "prevailing rule" is "that disclosure to an adversary, real or potential, forfeits work product protection."  United States v.

Mass. Inst. of Tech., 129 F.3d 681, 687 (1st Cir. 1997). In the instant case, Hanover's claims adjuster disclosed the substance of her conversation with Secord to plaintiff's counsel — it is harder to imagine a more definite adversary. Similarly, Secord disclosed the alleged substance of his conversation with Hanover during his deposition, without objection. Under such circumstances, it is clear that any privilege Hanover intended to assert regarding the information Secord provided to the claims adjuster has been waived.

For all these reasons, the documents plaintiff has requested reflecting the manner in which the gun was stored and the date Secord contends he learned the gun was stolen are not privileged and must be produced.

### B. Continued Viability of the Motion to Compel

The defendants contend that this court should deny the motion to compel because the issue is moot given the New Hampshire court's order granting summary judgment. They have cited no cases on point, and this court concludes that the motion is not moot.

Once the information is produced, the plaintiff may attempt to use the information from the documents in post-judgment proceedings if appropriate. See, e.g., Fed. R. Civ. P. 60. Whether or not the information will then be considered by the New Hampshire courts will be decided by those courts. However, given that the information is clearly not privileged, and that the date of Secord's knowledge was critical to the District Court's summary judgment decision, in this court's view the defendants should not be able to continue to wrongfully withhold the information due to the fortuitous timing of the summary judgment decision. This is especially true if the date Secord gave to Hanover is

inconsistent with his deposition testimony. Under such circumstances, this court has concerns about how Secord was allowed to testify at his deposition without explaining any discrepancy. The plaintiff has the right to have her case decided on a full record, and the trial court should not be deprived of relevant information because of the assertion of meritless objections.

The defendant faults the plaintiff for not bringing the existence of this dispute to the New Hampshire District Court's attention in connection with the summary judgment motions. However, as this court understands the chronology, the issue was pending before that court in the form of Hanover's objections and Secord's motion to quash. The issue also was appropriately pending in this court in connection with the plaintiff's motion to compel the subpoenaed documents. Unfortunately for the plaintiff, the New Hampshire District Judge exercised his right to decide the summary judgment motion without a hearing, and did not have the motion to quash before him because it had been referred to a Magistrate Judge. While in hindsight a better practice may have been for the plaintiff to have filed a pleading pursuant to Fed. R. Civ. P. 56(f) in connection with her opposition to the summary judgment motion, and thereby called the District Judge's attention to the dispute about these documents, in this court's view the plaintiff's decision to proceed as she did was not so blatantly in error as to preclude her from obtaining what may be critical information to her case. Whether the information turns out to be relevant and/or admissible in the New Hampshire litigation is not for this court to decide.

## IV. **CONCLUSION**

For the reasons detailed herein, plaintiff's motion to compel the production of documents is ALLOWED. Within ten (10) days of the date of this order, Hanover shall produce the documents reflecting statements made by Secord regarding the manner in which the gun was stored and the date he learned his gun had been stolen. The documents should be redacted to exclude Hanover's mental impressions, conclusions, opinions, or legal theories.

      / s / Judith Gail Dein
Judith Gail Dein
U.S. Magistrate Judge